Otto C. Jaeger, S.
This is a combined proceeding brought by
an administrator for approval of a wrongful death compromise and for judicial settlement of his account relating to the proceeds to be paid thereunder. There are additional items of incidental relief requested which will be discussed as they are passed upon below.
It appears that decedent, a domiciliary of Port Chester, New York, was killed when the car she was driving was negligently struck by another in the Town of Greenwich, Connecticut, on January 31, 1970 at approximately 10:15 p.m. Both the driver and the owner of the other car involved were also residents of Port Chester, New York. Decedent was survived by a divorced spouse and four children, three of the children being infants. The adult child, age 23, is the administrator herein. At time of death, two of said infants, being daughters ages 19 and 18 respectively, were married and living apart from decedent’s abode. The unmarried infant, a son then 16 years of age, lived with the decedent and was almost entirely dependent upon her for his support and maintenance. All of the afore-mentioned survivors, with the exception of one married infant, resided here in New York, in fact, all in Port Chester. None then resided in Connecticut, nor does any now.
*168 The divorced spouse has made no claim to share in the proceeds of settlement and has duly waived and consented to the relief requested. However, an issue has arisen among the remaining parties with "respect to the allocation of the net proceeds of settlement in the manner set forth in petitioner’s account. The account reflects a proposed distribution pursuant to the laws of Connecticut (Conn. Gen. Stat. [1969 Revision], § 45-280) under which, in the case of intestacy, distribution of the net proceeds of a wrongful death recovery is directed to be made in accordance with the law concerning the distribution of intestate personal estate. Under the circumstances here, with the divorced spouse not claiming any interest in these proceeds, each of decedent’s children would share equally in the net recovery (Conn. Gen. Stat. [1949 Revision], § 45-274). Thus, as will be discussed more fully below, it appears that Connecticut’s wrongful death statute is a survival statute and in this regard, differs materially from our New York statutes.
Since the account here indicated that all infants were similarly situated with respect to the proposed distribution, one guardian ad litem was appointed to appear on their behalf. This guardian, by interim report, advised the court that as a result of his initial investigation of the facts and examination of the applicable law, he was constrained to challenge the proposed method of distribution on the ground that Connecticut law was inapplicable thereto; that in his opinion New York law (EPTL 5-4.4) would govern distribution; that as a result thereof there then existed a conflict of interests between the one unmarried infant and the two married infants, the latter two allegedly having suffered no pecuniary loss from the death of their mother. He thereupon properly requested the court to appoint a different guardian ad litem to appear on behalf of the married infants and the court did so.
The guardian for the married infants and counsel for petitioner have vigorously opposed the position taken by the first guardian with respect to the question of which State’s law of distribution applies. The facts as such are not in dispute. However, the relative importance of each fact and the respective weight each should be given to resolve this choice of law problem is the area where the parties are in irreconcilable disagreement.
Were this issue to have arisen prior to 1963, there would appear little doubt that the law of Connecticut would control (Matter of Jones, 192 N. Y. S. 2d 208 [1959] ; Matter of Petrasek, 191 Misc. 9 [1948]). However, it was in that year that the Court of Appeals, in its historic opinion written in Babcock v. Jackson (12 N Y 2d 473) for the first time undisputably rejected the *169 inexorable application of lex loci delicti in a conflict of law setting arising from an automobile accident.
It becomes important at this point to emphasize that the conceptual foundation of lex loci delicti lay in the vested rights doctrine : ‘ ‘ namely, that a right to recover for a foreign tort owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and extent solely on such law * * * More particularly, as applied to torts, the theory ignores the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues.” (Babcock v. Jackson, supra, pp. 477-478).
Accordingly, the court went on to note that this doctrine had been rejected in other tort situations where the place of the tort had no reasonable or relevant interest in the particular issue involved. Where the various courts, after examining the particular circumstances presented, applied the law of some jurisdiction other than the place of the tort, they did so because their particular jurisdiction had a more compelling interest in the application of its law to the legal issue involved. This then became known as the ‘ ‘ center of gravity ” or “ grouping of contacts ’ ’ doctrine shown to be the appropriate approach through which ‘ ‘ Justice, fairness and ‘ the best practical result ’ * * * may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.” (p. 481). Thus, in applying these principles, the court found an Ontario guest statute barring recovery by a passenger against an owner or driver inapplicable to the litigation among the New York residents.
Thereafter followed a series of cases (which the court itself has recognized as somewhat lacking in precise consistency both as to logic and result) in which the court was called upon to invoke this new doctrine. In doing so, it seemingly restricted its application where the rights of third parties may be involved (Dym v. Gordon, 16 N Y 2d 120, which many found confusing, see, e.g., 34 Fordham L. Rev. 711); somewhat changed its emphasis from a qualitative to a quantitative analysis of the contacts (Macey v. Rozbicki, 18 N Y 2d 289) ; extended its application beyond the field of torts to decedents’ estates (Matter of Crichton, 20 N Y 2d 124) ; broadened its embrace to apply the more liberal New York Vehicle and Traffic Law rather than that of North Carolina to impose liability on a New York car owner (Farber v. Smolack, 20 N Y 2d 198) ; reiterated its rule to be ‘1 that the law of the jurisdiction having the greatest interest in the litigation will be applied ” (Miller v. Miller, 22 N Y 2d 12, *170 15-16), and finally in Tooker v. Lopes (24 N Y 2d 569) stressed its original qualification that where the defendant’s alleged wrongful conduct is at issue (which the court found not to be the case here), the place of the tort would have a predominant, if not exclusive concern and reaffirmed its qualitative analysis of the contacts.
Coming to the choice of law question here presented, this court must now determine the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised — that issue being simply: to whom and in what proportion should the proceeds of settlement be distributed?
The contacts in Connecticut, when applied to this issue, have little gravitational pull when contrasted with the overwhelming contacts found in New York. None of the persons who would share, under the laws of either jurisdiction, resides in Connecticut. All save one (who lives in the State of Kansas) live here in New York. True enough, the accident happened in Connecticut and the parties involved, while living here in New York, worked there. But this accident was not connected with their employment. The fact that the two parties involved in the accident earned their livelihood in Connecticut in and of itself has no bearing on the issue before this court namely, distribution of the proceeds of settlement. Certainly it does not give Connecticut a concern over this issue superior to that of New York.
Neither does the issue raised here in any way bear upon the regulation of the conduct of New York domiciliarles in Connecticut. The conduct of the parties is not before this court for determination, although it appears from the Greenwich police records that this accident may have resulted'when the other driver was fleeing from a previous accident in which he was involved here in New York. If it did so result, this would only give New York an additional interest in resolving this issue of distribution of damages recovered from the wrongful death of one New York domiciliary caused by another, in vehicles registered here in New York and kept here. Nor can our application of New York law, with its underlying theory of compensation for pecuniary loss, be held to violate the policy of Connecticut when no one living or working in Connecticut has an interest in sharing in these proceeds.
A final point raised by the guardian for the married infants and counsel for petitioner warrants comment. Much has been made of the fact that the numerous automobile accident cases mentioned above, involved wrongful death situations where *171 there was a guest-host relationship previously created and not, as here, a driver against driver situation in which there was no prior relationship between the parties. Even granting that to be true, the court fails to see what relevance this fact may have on the isolated issue now in dispute. The court hastens to add that it does not believe, after having studied the voluminous pages of the opinions above cited, that the broad principles spelled out so forcefully there would admit of such a narrow application. New York has as much concern with the disposition of these funds, in which an infant domiciliary may have the only interest, as it does with avoiding the foreign guest statutes as a matter of our State’s policy when New York domiciliaries are involved. The cases cited in the briefs on this issue of distribution in the main, have one fatal flaw, i.e., they predate the Babcock decision. The court does not view Fornaro v. Jill Bros. (22 A D 2d 695, affd. 15 N Y 2d 819) as being dispositive of the issue now before it. There the courts found New Jersey to have the dominant contacts and thus applied New Jersey law for all purposes. No such finding is appropriate here.
Thus, this court determines that New York law governs the distribution of the proceeds of settlement hereunder and accordingly, distribution shall be made pursuant to the provisions of EPTL 5-4.4.
Petitioner will be authorized to compromise the claim for wrongful death in the sum proposed.
Attorney’s fees, to be computed in accordance with the retainer agreement entered into between petitioner and his attorney, will be allowed together with disbursements in the total sum shown in the attorney’s supplemental affidavit of August 24,1970.
Statutory commissions to be computed on the residue of the recovery will be allowed with the amount thereof to be fixed in the decree to be made herein.
It appears that decedent’s adult son was employed and self-supporting at the time of his mother’s death and that he has suffered no pecuniary injury as a result thereof. It further appears that the two married infant daughters were both dependent solely upon their husbands for their support and maintenance and therefore are not entitled to share in the within recovery (Matter of Sintyago, 198 Misc. 776). As noted above, the unmarried infant was almost entirely dependent upon his mother for his support, maintenance and education. It appears that decedent’s divorced spouse was contributing the sum of $12 per week to be applied to the said infant’s welfare *172 pursuant to the terms of the divorce decree. Beyond that small sum, this infant’s mother was obligated to bear the expense of his support. As mentioned previously, the divorced spouse is making no claim to share in these proceeds (and well might be disqualified from sharing in light of EPTL 5-1.2).
Accordingly, the court determines that the only distributee of this decedent who has suffered any pecuniary loss by reason of her death is her infant son, Timothy Lyle Flynn who is therefore, entitled to receive the entire net proceeds of this recovery.
The decree to be made herein shall contain a provision for the payment by the parties against whom claim has been made and to the extent that coverage exists, by their insurance carrier, to the guardian of said infant son if appointed within 30 days from the settlement of the decree; otherwise the funds shall be deposited with the Commissioner of Finance of Westchester County for the benefit of the infant.